UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-971(DSD/JMM)

James Rosengren,

Plaintiff,

v. **ORDER**

GMAC Mortgage Corporation,
a foreign corporation of
Pennsylvania,

Defendant.

Thomas J. Lyons, Jr., Esq., and Peter F. Barry, Esq. Consumer Justice Center, 342 County Road D E, Little Canada, MN 55117, counsel for plaintiff.

Paul A. Weingarden, Esq., Thomas B. Olson, Esq. and Olson, Usset & Weingarden, 4500 Park Glen Road, Suite 300, Minneapolis, MN 55416, counsel for defendant.

This matter is before the court on the parties' cross-motions for summary judgment. Based on a review of the file, record, and proceedings herein, the court grants plaintiff's motion and denies defendant's motion.

**BACKGROUND**

Plaintiff James Rosengren ("Rosengren") financed his home with a loan from defendant GMAC Mortgage Corporation ("GMAC"). In January 2000, Rosengren filed Chapter 7 bankruptcy. At the time of the filing, Rosengren was past due on two payments to GMAC.

FILED 8-7-01
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 8-7-01
Deputy Clerk's Initials

However, the GMAC mortgage loan was not listed on the bankruptcy petition as a debt to be discharged because Rosengren intended to make up the back payments. (Rosengren dep. at 25-26.) His only goal in filing for bankruptcy was to "get out from under" two automobile loans totaling approximately $37,000. (Id. at 15.)

Rosengren testified that he received a message on his home answering machine in early February 2000 asking him to call GMAC. He returned the call and spoke with a woman, later identified as Irene Wolfgram of GMAC. (Id. at 47.)[1] When Wolfgram learned that Rosengren had filed for bankruptcy, she indicated that she could not speak further with him. (Id. at 46; Wolfgram dep. at 64.) Nonetheless, Wolfgram proceeded to ask him whether he intended to reaffirm his obligation to GMAC. (Wolfgram dep. at 64-65.) Rosengren replied that he wanted to work out a payment schedule so that he could keep his home, but that his attorney advised him that reaffirmation paperwork was not necessary. (Id.) Wolfgram suggested he speak further with his attorney. (Supp. Barry Aff. Exh. 1.) She also agreed to have someone else from GMAC call him. (Rosengren dep. at 46.)

---

[1] GMAC does not dispute that for purposes of summary judgment, GMAC initiated the first contact with Rosengren. However, for purposes of clarifying the record, the court notes that GMAC's phone log gives no indication that a message was left at Rosengren's home and that he called GMAC back and reached Wolfgram. Rather, the log suggests that Wolfgram initiated a single telephone call to follow up on Rosengren's delinquent account and that she reached him on this first and only attempt. (Supp. Barry Aff. Exh. 1.)

Rosengren then received a second message on his answering machine from Paul Webb, a bankruptcy specialist for GMAC. (Barry Aff. Exh. 4, Webb dep. at 32.) Webb said he was aware that Rosengren wanted to keep his home, but he indicated that because Rosengren was delinquent, GMAC had little choice but to file for relief from the bankruptcy stay, a move which would impose additional fees on Rosengren's loan balance. (Supp. Barry Aff. Exh. 1.) Webb encouraged Rosengren to speak to his attorney. (Id.) Rosengren asserts that he did not return Webb's call, but that another GMAC bankruptcy specialist, Jeff Choi, called him on February 10, 2000. (Rosengren dep. at 47.)[2] Choi told him that if he did not make up his two past due payments soon, a relief motion would be filed, costing him $500. (Rosengren dep. at 48.) Rosengren advised Choi that he planned to make one payment by February 18, 2000 and the other by March 15, 2000. (Choi dep. at ¶ 4.) Choi requested that Rosengren pay by money order rather than personal check. (Rosengren dep. at 62.)

Rosengren made the double payment and retained possession of his home. His bankruptcy was discharged on April 12, 2000. Rosengren then filed this lawsuit alleging that GMAC violated the automatic stay provision of the federal bankruptcy code, 11 U.S.C. § 362, and invaded his privacy. According to his complaint, he

[2] GMAC's records suggest that Rosengren did return Webb's call on February 10 and that Choi spoke to him at that time. (Supp. Barry Aff. Exh. 1.)

seeks $5,000 in compensatory damages and $25,000 in punitive damages. On March 7, 2001, the court granted GMAC's motion to dismiss the state law invasion of privacy claim. The parties now bring cross-motions for summary judgment on the automatic stay claim.

**DISCUSSION**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating to the court that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 250.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23. With this standard at hand, the court considers the parties' cross motions for summary judgment.

The federal bankruptcy code provides that the filing of a bankruptcy petition acts as an automatic stay with respect to "any [post-petition] act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The code also forbids a creditor from engaging in "any [post-petition] act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). Once a bankruptcy petition is filed, the stay is effective immediately. McDonell v. Eggestein, 357 N.W.2d 168, 170 (Minn. Ct. App. 1984).

An individual who has been "injured by any willful violation of a stay ... shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). As the language of the statute suggests, to prevail on a claim for violation of the stay, a plaintiff must establish that: (1) a violation occurred; (2) the violation was committed willfully, (3) the violation caused actual damages. Lovett v. Honeywell, Inc., 930 F.2d 625, 628 (8th Cir. 1991); Adams v. Harconn Assocs., Inc. (In re Adams), 212 B.R. 703,

708 (Bankr. D. Mass. 1997). If all three elements are met, the court must award compensatory damages then decide whether punitive damages are appropriate. Adams, 212 B.R. at 708.

GMAC argues that this lawsuit should be dismissed because its contacts with Rosengren during the pendency of his bankruptcy do not constitute a "willful violation" of the automatic stay. GMAC emphasizes that it contacted Rosengren only as a courtesy and in response to Rosengren's expressed desire to make up his late mortgage payment and keep his house. GMAC suggests that under those circumstances, its continuing contacts with Rosengren do not reflect a deliberate intent to violate the stay. However, a "willful violation" of the automatic stay does not require specific intent to violate the stay. Rather, the standard for a willful violation of the automatic stay under Section 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constitute the violation. See Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265, 268 (1st Cir. 1999); Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1105 (2d Cir. 1990); Cuffee v. Atlantic Bus. & Community Dev. Corp. (In re Atlantic Business & Community Corp.), 901 F.2d 325, 329 (3d Cir. 1990); Goichman v. Bloom (In re Bloom), 875 F.2d 224, 227 (9th Cir. 1989).

In this case, it is undisputed that GMAC was aware that Rosengren had petitioned for bankruptcy at the time that Paul Webb

and Jeff Choi telephoned Rosengren and exerted pressure on him to bring his account current. Even Irene Wolfgram became aware of Rosengren's status during her phone call to him, yet she continued to seek information regarding Rosengren's intent as to his condominium. This record of GMAC's repeated intentional contact with Rosengren despite its knowledge of his bankruptcy compels the conclusion that GMAC willfully violated the automatic stay.

GMAC suggests that there can be no violation where the debtor is equally at fault. However, once the creditor receives actual notice of the debtor's bankruptcy, the burden is on the creditor to prevent violations of the automatic stay. Mitchell Const. Co., Inc. v. Smith (In re Smith), 180 B.R. 311, 319 (Bankr. N.D. Ga. 1995). As one bankruptcy court observed:

> In order to reduce the possibility of stay violation accusations, a creditor advised that a bankruptcy has been filed or is being filed should continue the conversation only long enough to obtain information to verify the bankruptcy, i.e., the creditor should ask for the case number and the district and division in which the case is pending. If this information is unavailable, the creditor should ask for the name of the debtor's attorney and then promptly hang up. Questions regarding the debtor's intentions with respect to collateral are inappropriate.

In re Skeen, 248 B.R. 312, 318 n.2 (Bankr. E.D. Tenn. 2000). In view of the fact that Webb and Choi were clearly aware of

Rosengren's status as a bankruptcy petitioner, it was incumbent on GMAC to observe the strictures of the automatic stay provisions and direct all further contact to Rosengren's attorney.

The question remains as to whether GMAC's failure to adhere to the stay has damaged Rosengren in any way. GMAC contends that because Rosengren retained possession of his condominium, as was his intent from the beginning, he cannot establish that he has been damaged by GMAC's contact with him. Moreover, GMAC vigorously asserts that Rosengren's failure to timely disclose his actual damages precludes recovery.

The record indicates that during discovery Rosengren did not provide the requisite disclosure of damages under Fed. R. Civ. P. 26(a)(1)(C), and in his deposition he testified that he lost nothing because of GMAC's conduct. (Rosengren dep. at 64, 73.) In addition, in the context of settlement discussions, GMAC made repeated attempts to precisely ascertain Rosengren's damages, to no avail. For example, after receiving a demand for $25,000, defense counsel sent plaintiff's attorney a letter on October 20, 2000, which stated:

> ...without a breakdown of the alleged damages, they (GMAC) have no means by which to make a good faith response to your settlement demand... I have indicated that the Pretrial Order requires that you make available a computation of any damages claimed by the disclosing party based under Rule 26(a)(1)(c).
>
> Please amend your settlement offer by complying with the provisions of the Rule and

> providing a breakdown of the alleged damages, breaking down any actual or consequential damages as opposed to punitive damages or attorney's fees.

(Supp. Aff. Thomas Olson Exh. B.) Plaintiff's counsel responded by repeating his client's prayer for relief: "an amount in excess of $5,000 against Defendant as compensatory damages and $25,000 as punitive damages." (Id. Exh. C.) No computation of compensatory damages was furnished with the letter. Additional correspondence provided by defense counsel reflects that this evasive pattern continued throughout the discovery period. (Id. Exhs. D-G.)

It was not until GMAC filed its motion for summary judgment that Rosengren finally submitted, by affidavit, an itemization of his damages. According to Rosengren, based on GMAC's insistence that he complete immediate double payment, he has suffered actual damages in the amount of $87, which includes a Speedpay service fee of $15, a stop payment fee of $21, $50 in interest on a loan from a friend and two $1 late payment fees from his utilities providers. By the court's calculations, Rosengren's actual losses total $88.[3]

---

[3] Rosengren also suggests that he suffered embarrassment due to his need to borrow money from his family to meet Choi's harassing directives. As succinctly stated by one bankruptcy court, "[b]ecause the emotional distress suffered ... was fleeting, inconsequential, and medically insignificant, the Court concludes that it is not compensable." Crispell v. Landmark Bank (In re Crispell), 73 B.R. 375, 380 (Bankr. E.D. Mo. 1987). See also Copeland v. Hubbard Broadcasting, Inc., 1997 WL 729195 at *4 (Minn. Ct. App. 1997) (requiring evidence of at least a minimum amount of physical manifestation of distress before claim of emotional distress based on direct invasion of rights can proceed).

Citing to Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir. 1983), GMAC argues that Rosengren should not be entitled to avoid summary judgment by submitting this belated and contradictory statement of damages. GMAC also asserts that had it been made aware of the limited extent of Rosengren's actual damages, it would have consented to a judgment and would have immediately paid the claim for damages rather than continue this lawsuit. The court is sympathetic to GMAC's frustration, however it must accept the possibility that as a layperson, Rosengren may not have fully appreciated what he was being asked to provide when questioned at his deposition about his losses. (Rosengren Aff.)

By contrast, plaintiff's counsel undoubtedly knew exactly what was being asked of him, yet he failed to comply with his duty under Fed. R. Civ. P. 26(a)(1)C) to disclose a computation of his client's damages and refused to respond to GMAC's repeated requests that he provide them with this vital information. While the statute requires the court to award Rosengren his $88 in damages, counsel's dilatory conduct does not merit a substantial award of attorney fees. As a federal bankruptcy judge once noted:

> The Bankruptcy Court is a very busy place and the Court's time and parties' monies should be spent on matters which are of serious consequence to the parties involved. As it relates to stay violations, such seriousness is not necessarily equated to the size of the economic impact of a matter, but may well include emotional trauma visited upon debtors

> by creditors who refuse to honor either the automatic stay or the discharge injunction, who harass debtors in other inappropriate ways or who demonstrate repetitive noncompliance. This Court will always hear and give serious attention to such allegations. But the unnecessary escalation of a matter of somewhat limited consequence which could have been resolved by much less lawyering does not make economic or emotional sense. Such escalation creates damages, magnifies costs, and burdens the system. More significantly, such efforts reveal a lack of perspective.

In re Newell, 117 B.R. 323, 325 (Bankr. S.D. Ohio 1990).

The federal district court is no less interested than the bankruptcy court in promoting efficiency and encouraging the consensual resolution of relatively minor disputes. Moreover, the court notes that the policy of Section 362(h) to discourage willful violations of the automatic stay has long been "tempered by a reasonableness standard born of courts' reluctance to foster a 'cottage industry' built around satellite fee litigation." In re Robinson, 228 B.R. 75, 85 (Bankr. E.D.N.Y. 1998) (quoting Putnam v. Rymes Heating Oils, Inc. (In re Putnam), 167 B.R. 737, 741 (Bankr. D.N.H. 1994)). Attorneys are not at liberty to incur large legal fees simply because those fees will be shifted to their adversaries pursuant to Section 362(h). Price v. Pediatric Academic Assoc., Inc., 175 B.R. 219, 221 (S.D. Ohio 1994), on remand, In re Price, 179 B.R. 70 (Bankr. S.D. Ohio 1995).

Therefore, based on the failure of plaintiff's counsel to timely advise opposing counsel of his client's actual damages and

in light of the de minimus nature of those damages, the court will limit the award of attorney fees in this case to $150, which reflects the court's estimation of the limited legal work required to dispose of this matter short of litigation. See Price, 179 B.R. at 73 (limiting fee award to $75 where legal fees and judicial time far exceeded the $13 in actual damages); Putnam, 167 B.R. at 741-42 (reducing attorneys' fees by over 50% where, inter alia, the fees bore no relation to the amount of actual damages suffered and where Debtor failed to attempt to settle the matter before filing the motion). See also Robinson, 228 B.R. at 85-86 (cataloguing additional cases in which courts have greatly reduced awards of attorneys' fees in situations where unnecessary costs were incurred.)

Finally, plaintiff's request for punitive damages in this case is denied. Under Section 362(h), an award of punitive damages is within the discretion of the trial court and proper only in appropriate circumstances. Davis v. IRS, 136 B.R. 414, 423 n. 20 (E.D. Va. 1992). Appropriate circumstances ordinarily are those in which the creditor has demonstrated egregious, vindictive or intentional misconduct. Lovett, 930 F.2d at 628. No evidence of such conduct is before the court, therefore punitive damages are not warranted.

In sum, the court concludes that Rosengren has met his burden of establishing that GMAC wilfully violated the automatic stay

provisions of 11 U.S.C. § 362 and that he has been damaged as a result of GMAC's conduct. Therefore, the court denies GMAC's motion for summary judgment and grants Rosengren's motion for summary judgment, awarding Rosengren $88 to compensate him for his losses. Rosengren's request for punitive damages is denied and the award of attorney fees is limited to $150.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for summary judgment is denied.

2. Plaintiff's motion for summary judgment is granted.

3. Plaintiff is awarded $88 to fully compensate him for the damages he suffered as a result of defendant's violation of the automatic stay provisions of 11 U.S.C. § 362.

4. Plaintiff is also awarded attorney fees in the amount of $150.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 7, 2001

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

# Please forward this announcement to the recipient of this fax.

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

## For additional information on either program please visit our website at www.mnd.uscourts.gov.

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500